IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TRANSPARENT ENERGY LLC,

     Plaintiff,

v.                                                                    Case No. 3:19-cv-03022-L

PREMIERE MARKETING LLC,

     Defendant.

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this trademark infringement and unfair competition action is a Motion to Dismiss, Motion to Transfer in the Alternative (ECF No. 7) filed by Defendant Premiere Marketing LLC (Premiere Marketing). For the reasons stated, the Motion to Dismiss should be GRANTED in part and DENIED in part, and the Motion to Transfer should be DENIED. Plaintiff Transparent Energy LLC (Transparent Energy) should be granted leave to file an amended complaint.

**Background**

Transparent Energy provides energy brokerage services in Texas and "many other states[.]" Compl. 3, ¶ 9 (ECF No. 1). It owns the United States trademark (Registration No. 2,227,222) for the service mark "TRANSPARENT ENERGY" (the "Mark"). *Id.* ¶ 10. The Mark was registered on June 20, 2017, but, according to Transparent Energy, it has "extensively promoted and advertised its services"

1

under the Mark since November 1, 2016. *Id.* ¶¶ 10, 14. "On December 12, 2016, Premiere Marketing filed a New Jersey registration of alternate name application for the name 'Transparent Energy' with the stated business purpose of 'Energy Consulting[.]'" *Id.* 3-4, ¶ 16. Transparent Energy alleges that, since then, Premiere Marketing has used the Mark without authorization as the title of its website and in metatags on its website. *Id.* 4, ¶¶ 18-19. According to Transparent Energy, it became aware of Premiere Marketing's unauthorized use of the Mark in September 2017 and notified Premiere Marketing promptly that its conduct infringed the Mark. *Id.* ¶¶ 22-23. Transparent Energy again contacted Premiere Marketing regarding the alleged infringement on August 14, 2019 by sending it a cease and desist letter, but Premiere Marketing did not respond. *Id.* 5, ¶ 25. Instead, Transparent Energy alleges, Premiere Marketing "registered an assumed name certificate for the name 'Transparent Energy' in Texas on August 18, 2019[.]" *Id.* ¶ 27. Premiere Marketing then registered as a broker with the Public Utility Commission of Texas under the name "Transparent Energy" and continues to conduct business in that capacity "within the field of use of the [Mark]." *Id.* ¶¶ 28-29.

Transparent Energy filed this suit on December 20, 2019. Premiere Marketing timely filed the instant Motion asking the Court to dismiss Transparent Energy's claims or, in the alternative, transfer the case to the District of New Jersey. Transparent Energy timely responded. Premiere Marketing did not file a

reply, and the time to do so has expired. Accordingly, the Motion is ripe for determination.

## Legal Standards

### I. Rule 12(b)(6)

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they

3

must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id*. at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

## II.  28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) requires the court to first evaluate whether the suit could have been brought in the district or division to which the moving party proposes transferring it. *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003) (per curiam). Venue is proper in a judicial district in which any defendant resides, if all defendants are residents of the same state. 28 U.S.C. § 1391(b)(1).

If the case could properly have been brought in the proposed forum, then the court must consider certain private and public interest factors to determine whether, on balance, transferring the case would best serve the interests of justice and be more convenient for the parties and witnesses. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (quoting *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) (per curiam)). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quoting *In re Volkswagen AG,* 371 F.3d at 203). A court may not transfer a case where doing so only shifts the venue's inconvenience from one party to the other. *Evol, Inc. v. Supplement Servs., LLC*, 2010 WL 972250, at *1 (N.D. Tex. Feb. 28, 2010), *adopted by* 2010 WL 982564 (N.D. Tex. Mar. 16, 2010) (citing *Fowler v. Broussard,* 2001 WL 184237, at *2 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.)). "The moving parties bear the burden of proving by a preponderance of the evidence that transfer is appropriate." *Id.* (quoting *Bank One, N.A. v. Euro-Alamo Invs., Inc.,* 211 F. Supp. 2d 808, 812 (N.D. Tex. 2002) (Fitzwater, J.)). "A motion to transfer

venue pursuant to § 1404(a) should be granted if the movant demonstrates that the transferee venue is clearly more convenient[.]" *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (internal quotation marks and citation omitted).

## Analysis

As mentioned above, Premiere Marketing moves to dismiss Transparent Energy's claims or, in the alternative, to transfer this case to the District of New Jersey. The Court first considers Premiere Marketing's request to transfer and, finding that such request should be denied, then takes up Premiere Marketing's Motion to Dismiss.

### I. Premiere Marketing's Motion to Transfer should be denied.

The parties do not dispute that venue is proper in the District of New Jersey. For venue purposes, a defendant entity is a resident of any judicial district in which it is subject to the federal court's personal jurisdiction with respect to the civil action at issue. 28 U.S.C. § 1391(c)(2). A federal court may exercise jurisdiction over an entity "when [its] affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home" in that state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Here, Transparent Energy alleges—and Premiere Marketing confirms—that Premiere Marketing's principal place of business is in New Jersey. Compl. 1, ¶ 2; Mot. 2. Premiere Marketing further states that it employs over 100 people and serves over 400 customers in New Jersey. Mot. 2. Transparent Energy does not contest that Premiere Marketing is essentially at

home in New Jersey. But Premiere Marketing has not established that the District of New Jersey is a "clearly more convenient" forum than the Northern District of Texas for this litigation. *In re Radmax*, 720 F.3d at 288. Indeed, all the private and public interest factors governing transfer are either neutral or weigh against transfer.

The first private interest factor, access to sources of proof, pertains to where documentary evidence, such as documents and physical evidence, is stored. *See In re Volkswagen of Am.*, 545 F.3d at 316 (discussing the location of documents and physical evidence relating to a vehicle accident); *see also Implicit, LLC v. Palo Alto Networks, Inc.*, 2018 WL 1942411, at *2 (E.D. Tex. Feb. 20, 2018) ("[T]his factor looks at where the documents are located[.]"). Premiere Marketing contends that the first private interest factor is neutral because Transparent Energy's claims arise from Premiere Marketing's online activity. Mot. 6. Meanwhile, Transparent Energy argues that the first private interest factor weighs against transfer because all Transparent Energy's files—including documents related to day-to-day activities, documents related to the prosecution of its trademark, and customer emails—are stored either in physical paper files or on a computer located in Grand Prairie, Texas in the Northern District of Texas. Resp. 15 (ECF No. 9). Because Premiere Marketing has not responded to Transparent Energy's argument that the presence of Transparent Energy's documents in the Northern District of Texas weighs against transfer, let alone described any source of proof that exists in the

District of New Jersey, the Court finds that the first private interest factor weighs against transfer.

The second and third private interest factors address, respectively, availability of compulsory process to secure the attendance of witnesses and the cost of attendance for willing witnesses. Federal Rule of Civil Procedure 45 provides that "[a] subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business," or "within the state where the person resides, is employed or regularly transacts business in person, if the person" is a party to the suit or is commanded to attend trial and would not incur substantial expense. Fed. R. Civ. P. 45(c)(1). Premiere Marketing argues that the second and third factors weigh in favor of transfer because the "vast majority of [its] available witnesses are likely to be found within New Jersey." Mot. 7. Premiere Marketing states that it has: four executives in New Jersey and zero in Texas; thirty-two W2 employees in New Jersey and two in Texas; seventy-seven 1099 workers in New Jersey and zero in Texas; and 440 active clients in New Jersey and 10 in Texas. Mot. 2. Transparent Energy, however, points out that Premiere Marketing does not disclose what, if any, information these workers and clients possess relevant to the claims of the case or identify any that may be expected to testify. Resp. 16. Meanwhile, Transparent Energy maintains that because it has identified both party and nonparty witnesses located in Texas, these factors weigh against transfer. Krajewski Decl. 3 (ECF No. 9-1).

The Court finds the second and third factors do not weigh in favor of transfer. As to the second factor, a party seeking transfer under § 1404(a) must identify witnesses for whom compulsory process will be needed. *See Silvertson v. Clinton*, 2011 WL 4100958, at \*5 (N.D. Tex. Sept. 14, 2011) (citing *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2009 WL 2634860, at \*5 (N.D. Tex. Aug. 26, 2009)). Premiere Marketing has not done so here. Moreover, as to the third factor, "the party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover." *Id.* (citing 15 Charles A. Wright & Arthur. R. Miller, *Federal Practice and Procedure* § 3851, at 221-22 (3d ed. 2007); *Magana v. Toyota Motor Corp.*, 2010 WL 5108850, at \*2 (N.D. Tex. Dec. 6, 2010)). Premiere Marketing has not identified any potential witnesses, much less any key witnesses it will call at trial, or adequately state what those witnesses' testimonies will cover.

The fourth private interest factor examines the practical problems that make trial easy, expeditious, and inexpensive. "[I]n rare and special circumstances a factor of 'delay' or of 'prejudice' might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence." *In re Horseshoe Ent.* 337 F.3d at 434. Premiere Marketing advances no argument with respect to this factor. Transparent Energy argues this factor weighs against transfer because Premiere Marketing has set forth no rare and special circumstances that would cause "delay or prejudice" should this case remain in the

Northern District of Texas and, in fact, the proposed transfer would cause "significant delay . . . in getting back on schedule for a trial date in the transferee district [because m]otions to transfer can often disrupt and stall litigation[.]" Resp. 17. The Court finds this factor weighs against transfer. Premiere Marketing has not established by clear and convincing evidence that delay or prejudice would result from failure to transfer.

The first public interest factor concerns the administrative difficulties flowing from court congestion. Premiere Marketing concedes that the District of New Jersey is a more congested court than the Northern District of Texas and that this factor weighs against transfer. Mot. 6.

The second public interest factor examines the local interest in having localized interests decided at home. Premiere Marketing posits that, because Transparent Energy's claims primarily concern alleged infringement and unfair competition arising from Premiere Marketing's online activity, this factor is neutral. *Id.* Transparent Energy argues that because it "is headquartered in and has witnesses and evidence in the Northern District of Texas," this factor weighs against transfer. Resp. 18. But the Court agrees with Premiere Marketing that this factor is neutral because the claims arise out of Premiere Marketing's online activity and not out of any activity occurring at Transparent Energy's headquarters. *See Abstrax, Inc. v. Hewlett-Packard Co.*, 2014 WL 5677834, at *6 (E.D. Tex. Nov. 4, 2014) ("HP contends that the Northern District of California has a greater local interest in this case because HP maintains its corporate headquarters in that

District. However, HP has failed to show that its employees or offices in the Northern District of California have a particular connection to this case."); *Silvertson*, 2011 WL 4100958, at *7 (dismissing argument that movant's office location affected transfer analysis because "the office ha[d] no connection to the facts of th[e] litigation").

The third public interest factor concerns the familiarity of the forum with the law that will govern the case. The fourth considers the avoidance of unnecessary problems of conflict of laws or the application of foreign law. Premiere Marketing argues that these factors are neutral, Mot. 6, and Transparent Energy does not argue that they weigh against transfer, Resp. 18. Accordingly, the Court finds these factors neutral.

Because none of the private or public interest factors governing transfer weigh in favor of transfer, Premiere Marketing's Motion to Transfer should be denied.

<u>II. Premiere Marketing's Motion to Dismiss</u>
<u>should be granted in part and denied in part.</u>

Having determined that Premiere Marketing's Motion to Transfer should be denied, the Court now considers its Motion to Dismiss. Transparent Energy brings the following claims: (1) federal trademark infringement; (2) federal trademark counterfeiting; (3) federal unfair competition and false designation of origin; (4) federal false association; (5) Texas statutory trademark infringement and dilution; (6) Texas common law trademark infringement; and (7) Texas common

law unfair competition and misappropriation. Claims (1), (2), (3), (4), and (6) should survive dismissal, while claims (5) and (7) should be dismissed without prejudice.

A. Transparent Energy's trademark infringement, unfair competition, false designation of origin, and false association claims under the Lanham Act, and its claim for Texas common law trademark infringement, should survive dismissal.

The elements of a trademark infringement claim under the Lanham Act are: (1) the plaintiff has a protectable interest in the mark; and (2) there is a likelihood of confusion between its mark and the defendant's mark. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008) (citing *Sec. Ctr., Ltd. v. First Nat'l Sec. Ctrs.*, 750 F.2d 1295, 1298 (5th Cir. 1985)). To determine whether there is a likelihood of confusion, courts consider: (1) the type of trademark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; (7) any evidence of actual confusion; and (8) the degree of care employed by consumers. *Id.* at 310 (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (1998); *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 830 (5th Cir. 1998)). These factors "do not apply mechanically to every case and can serve only as guides, not as an exact calculus." *Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 485 (5th Cir. 2004). A court should consider each factor in light of the circumstances of the case, and "different factors will weigh more heavily from case to case depending on the

particular facts and circumstances involved." *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 218 (5th Cir. 1985).

In the context of a Rule 12(b)(6) motion, the district court assesses whether the facts alleged, taken as true, demonstrate that a likelihood of confusion is plausible. *E.g.*, *IVFMD Fla., Inc. v. IVFMD, P.A.*, 2014 WL 11515574, at *6-7 (N.D. Tex. Mar. 7, 2014) (finding allegations that: (1) plaintiff's mark was "IVFMD" and accused mark was "IVFMD WHERE MIRACLES BEGIN"; (2) defendant provided substantially similar services to plaintiff; (3) plaintiff and defendant advertised in similar channels, for example, over the internet; and (4) defendant's infringement was willful, demonstrated likelihood of confusion was plausible); *John Crane Prod. Sols., Inc. v. R2R and D, LLC*, 2012 WL 1571080, at *3 (N.D. Tex. May 4, 2012) (finding allegations that: (1) plaintiff's mark was "FIBEROD" and accused mark was "FINALROD"; (2) marks were associated with the same type of product; (3) the products looked confusingly similar; (4) defendant's business directly competed with plaintiff's; (5) defendant's signs bearing the mark used the same stylized "F" in the logo; and (6) defendant's infringement was willful, demonstrated likelihood of confusion was plausible); *Full Sail, Inc. v. Dauben, Inc.*, 2008 WL 2434313, at *4 (N.D. Tex. June 17, 2008) ("The plaintiff holds the registration for the phrase 'Full Sail' for 'educational services[.]' . . . It is not a stretch for the court to envision a likelihood of confusion among consumers between the defendant's FULLSAILUNIVERSITY.COM website, which contains

the plaintiff's mark, and the plaintiff's mark as it relates to educational services, and that is sufficient for the claim to survive at the 12(b)(6) stage.").

Transparent Energy has stated a claim for federal trademark infringement under the Lanham Act. First, it alleges that it owns the Mark and that the Mark is registered with the United States Patent and Trademark Office. Compl. 3, ¶ 10. It also filed with its Complaint a copy of the trademark registration certificate. *See* Compl. Ex. 1 (ECF No. 1-1). Thus, it has adequately alleged a protectable right in the Mark. Second, contrary to Premiere Marketing's terse assertion, Transparent Energy has adequately alleged a likelihood of confusion. Indeed, Transparent Energy alleges that the Mark is TRANSPARENT ENERGY and Premiere Marketing has been using the term "Transparent Energy" to market its services on its website. Compl. 3-4, ¶¶ 10, 16-22. Thus, the Complaint alleges that the marks are identical. Transparent Energy also alleges that both it and Premiere Marketing use the Mark in energy consulting and brokering services. *Id*. 3-5, ¶¶ 9, 16, 24, 28-29. Moreover, Transparent Energy has alleged that both it and Premiere Marketing conduct business over the internet and market their services on their websites using the Mark. *Id*. 3-4, ¶¶ 9, 17-19. Finally, Transparent Energy alleges that it sent Premiere Marketing a notice that it was infringing the Mark, and that Premiere Marketing acknowledged receipt of that notice, in September 2017. *Id*. 4, ¶¶ 22-23. Thus, according to Transparent Energy's allegations, Premiere Marketing has knowingly infringed the Mark at least since that time. *See id*. On balance, the Court finds that these allegations, taken as true, demonstrate that a likelihood of confusion is

plausible and are sufficient to survive dismissal at the Rule 12(b)(6) stage. *See IVFMD Fla., Inc.*, 2014 WL 11515574, at *6-7 (finding plaintiff had plausibly alleged likelihood of confusion where it had pleaded: (1) its mark was identical to the accused mark; (2) plaintiff and defendant provided substantially similar services; (3) plaintiff and defendant advertised over the internet; and (4) defendant's infringement was willful). Accordingly, Premiere Marketing's Motion should be denied with respect to Transparent Energy's federal trademark infringement claim.

Federal unfair competition, false designation of origin, and false association claims, as well as Texas common law trademark infringement claims, all have the same elements as trademark infringement under the Lanham Act. *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226 (3d Cir. 2017) (noting that § 1125(a) of the Lanham Act creates "two distinct bases of liability: false association . . . and false advertising," and that "false designation of origin" is synonymous with "false association" (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:9 (4th ed. 2017) ("*McCarthy on Trademarks*"))); *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." (internal quotation marks and citation omitted)); *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir. 1993)

15

("As with trademark infringement, the touchstone of a section 1125 unfair competition claim is whether the defendant's actions are 'likely to cause confusion.'"); *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 762 (N.D. Tex. 2013) ("Unfair competition claims under the Lanham Act are governed by the same standards as those for trademark infringement, e.g., the likelihood of confusion." (citing *Scott Fetzer Co.*, 381 F.3d at 483)); *Bos. Pizza Rests., L.P. v. Bay Three Ltd.*, 2013 WL 12123894, at *5 (N.D. Tex. June 28, 2013) ("The elements of a claim for false designation of origin [under the Lanham Act] parallel those of a claim for trademark infringement, and the same evidence establishes both." (citing *Philip Morris USA, Inc. v. Lee*, 547 F. Supp. 2d 667, 674 (W.D. Tex. 2008); *Matrix Essentials*, 988 F.2d at 592)). Because Transparent Energy's trademark infringement claim under the Lanham Act should survive dismissal, so should its claims for unfair competition, false designation of origin, and false association under the Lanham Act, as well as its claim for Texas common law trademark infringement.

Premiere Marketing appears to argue that false designation of origin or false association claims under the Lanham Act are akin to dilution claims and require a showing that the asserted mark is famous. *See* Mot. 4 (stating that "Plaintiff's Dilution Claims Fail Because Its Marks Are Not Famous" and pointing to "Counts III-IV, and VII" as bringing such claims). Indeed, Premiere Marketing posits that "[u]nder federal and Texas law, dilution claims are only available to those who own 'famous' marks." *Id.* (citing 15 U.S.C. § 1125(c)(1)). But Transparent Energy does

not bring a dilution claim under the Lanham Act, 15 U.S.C. § 1125(c). And the Court does not agree with Premiere Marketing's unsupported argument that Transparent Energy's claims for unfair competition, false designation of origin, and false association under the Lanham Act constitute federal dilution claims, or that they require a showing that the asserted mark is famous. The Court addresses Transparent Energy's Texas statutory dilution claim in Subpart C below. Premiere Marketing's Motion should be denied with respect to Transparent Energy's trademark infringement, unfair competition, false designation of origin, and false association claims under the Lanham Act, as well as its claim for Texas common law trademark infringement.

### B. Transparent Energy's federal trademark counterfeiting claim should survive dismissal.

"To state a claim for trademark counterfeiting, a plaintiff must allege that: (1) defendants infringed a registered trademark in violation of [15 U.S.C.] § 1114(1)(a), and (2) intentionally used the trademark knowing it was a counterfeit[.]" *Haggar Clothing Co. v. Sai Lakshmi Indus. Pvt. Ltd.*, 2009 WL 2868443, at *5 (N.D. Tex. Sept. 3, 2009) (citing *Abercrombie & Fitch v. Fashion Shops of Ky., Inc.,* 363 F. Supp. 2d 952, 957-58 (S.D. Ohio 2005); *Playboy Enters. v. Universal Tel–A–Talk,* 1998 WL 288423 (E.D. Pa. June 3, 1998) (citing *Babbit Elec. v. Dynascan Corp.,* 38 F.3d 1161, 1181 (11th Cir. 1994)); *see also Springboards to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 713 (N.D. Tex. 2018). *See also* 5 *McCarthy on Trademarks* § 25.10 (5th ed. 2020 update)

("[C]ounterfeiting is 'hard core' or 'first degree' trademark infringement[.]"). "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

For the reasons explained above, Transparent Energy has adequately alleged trademark infringement under the Lanham Act. It has also alleged that the Mark is registered with the United States Patent and Trademark Office. Compl. 3, ¶ 10. Thus, it has adequately pleaded the first element of trademark counterfeiting. Moreover, as mentioned above, the Complaint establishes that the marks are identical and that Premiere Marketing had notice of its alleged infringement. The Court finds that, at this stage in the litigation, these allegations sufficiently establish that Premiere Marketing used the Mark knowing that it was counterfeit. Accordingly, Transparent Energy has adequately stated a claim for trademark counterfeiting, and Premiere Marketing's Motion with respect to such claim should be denied.

### C. Transparent Energy's Texas trademark infringement and dilution claims should be dismissed.

Subject to certain limitations, a person who uses a trademark may apply to register the mark with the Texas Secretary of State. Tex. Bus. & Com. Code § 16.052(a). And the Secretary of State "keeps for public examination a record of all . . . marks registered or renewed under" this regime. *Id.* § 16.060(a)(1). Under § 16.102, "a person commits an infringement if the person: . . . without the registrant's consent, uses anywhere in [Texas] a reproduction, counterfeit, copy,

18

or colorable imitation of a mark *registered under this chapter*[.]" *Id.* § 16.102(a)(1) (emphasis added); *see also id.* § 16.104(a) ("An owner of a mark registered *under this chapter* may bring an action to enjoin the manufacture, use, display, or sale of any counterfeits or imitations of a mark." (emphasis added)). Interpreting this statutory language, several courts in the Fifth Circuit have held that registration of the asserted mark with the Texas Secretary of State is an essential element of a trademark infringement claim under § 16.102. *See Mission Trading Co. v. Lewis*, 2017 WL 6935824, at *5 (S.D. Tex. July 31, 2017) ("Nowhere in Plaintiff's first amended complaint does it allege that its trademarks are registered under Texas law. Therefore, Plaintiff's claim under . . . § 16.102 fails as a matter of law."), *adopted by* 2017 WL 4941408 (S.D. Tex. Nov. 1, 2017); *SPFM L.P. v. Midmark Corp.*, 2017 WL 5235670, at *14 (W.D. Tex. July 31, 2017) (finding plaintiff "clearly ha[d] no statutory claim under § 16.102" where it "d[id] not assert ownership of a Texas registration for [the asserted marks] and ha[d] not produced evidence of any such registration in discovery"), *adopted by* 2017 WL 5484692 (W.D. Tex. Sept. 14, 2017); *Vesta Corp. v. Vesta Mgmt. Servs., LLC*, 2016 WL 8710440, at *14 (S.D. Tex. Sept. 30, 2016) (granting summary judgment on a trademark claim brought under § 16.102 because the trademark was registered federally but not in Texas).

The Court agrees that the language of § 16.102 plainly requires Texas registration. *See* 13 William Dorsaneo, *Texas Litigation Guide* § 200.01 (2020) ("The Texas Trademark Act provides remedies for infringement of a mark *registered in the State of Texas*[.]" (emphasis added)); 12 Tex. Jur. Pl & Pr. Forms

§ 229:5 (2d ed. 2019 update) (including "[d]ue registration of plaintiff's mark *by Secretary of State*" on checklist for drafting a petition for relief for trademark infringement (emphasis added)). Nowhere in the Complaint does Transparent Energy allege that the Mark is registered with the Texas Secretary of State. Accordingly, Premiere Marketing's Motion should be granted with respect to Transparent Energy's trademark infringement claim under § 16.102, and such claim should be dismissed without prejudice.

Dilution under § 16.103, on the other hand, may be asserted whether or not the mark at issue is registered with the Texas Secretary of State. The elements of dilution under § 16.103 are: (1) the plaintiff owns a famous and distinctive mark; (2) the defendant uses the mark in a manner that dilutes it; (3) there is association between the marks due to similarity; and (4) the association is likely to impair the distinctiveness of the mark or harm the reputation of the plaintiff's mark. *Viacom Int'l Inc. v. IJR Cap. Invs., LLC*, 242 F. Supp. 3d 563, 573 (S.D. Tex. 2017); *see also Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012) (enumerating same elements as those for claim of dilution under Lanham Act). A mark is famous if it is "widely recognized by the public throughout [Texas] or in a geographic area in [Texas] as a designation of [the] source of the goods or services of the mark's owner." Tex. Bus. & Com. Code § 16.103(b).

> In determining whether a mark is famous, a court may consider factors including: (1) the duration, extent, and geographic reach of the advertisement and publicity of the mark in [Texas] regardless of whether the mark is advertised or publicized by the owner or a third party;

> (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark in [Texas]; (3) the extent of actual recognition of the mark in [Texas]; and (4) whether the mark is registered in [Texas or federally].

*Id.* Asserting a claim under § 16.103 implicates the same standards as dilution under the Lanham Act. *Kipp Found.*, 325 F. Supp. 3d at 718. Federal law "restrict[s] dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie dolls, and the like." *Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, 2018 WL 1806500, at *4 (N.D. Tex. Apr. 17, 2018) (quoting *Bd. of Regents, Univ. of Tex. Sys. ex rel. Univ. of Tex. at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008)). "Other examples of famous marks include the JUST DO IT Nike slogan, the STARBUCKS mark, the MCDONALD'S mark, and the PEPSI mark." *Id.* (citing 4 *McCarthy on Trademarks* § 24:107 (5th ed. 2017)). The federal dilution statute is "simply not intended to protect trademarks whose fame is at all in doubt." *KST Elec.*, 550 F. Supp. 2d at 679. Because the statute requires that the plaintiff's mark be "recognized by the general consuming public of the United States," 15 U.S.C. § 1125(c)(2)(A), "fame only in a limited geographic area or niche market will not support a federal dilution claim," *Scholastic Book Fairs*, 2018 WL 1806500, at *4. "The Texas-law fame analysis is . . . similar to the federal-law fame analysis, but with a different geographical focus." *Shippitsa Ltd. v. Slack*, 2019 WL 3304890, at *10 (N.D. Tex. July 23, 2019).

Some courts in the Fifth Circuit have dismissed Texas dilution claims at the Rule 12(b)(6) stage for failure to plausibly plead that the asserted mark is a household name, "on par . . . with the likes of Starbucks [or] McDonald's[.]" *E.g.*, *id.* at *11 (dismissing on Rule 12(b)(6) grounds despite allegations that mark is registered, has been used for over ten years, that plaintiff offers its product to consumers around the world and in the federal district via its business website, that it spent nearly $2.5 million on worldwide marketing and advertising in single year, and that customers in the dietary supplement market recognize the mark as an identifier of plaintiff's products); *see also Hillstone Rest. Grp., Inc. v. Hillstone Mgmt., LLC*, 2017 WL 495869, at *3 (N.D. Tex. Feb. 7, 2017) (dismissing on 12(b)(6) grounds where "the complaint attempt[ed] to plead the § 16.103(b)(1)-(4) ['famous'] factors, [but did] so in conclusory terms").

Others in the Fifth Circuit, however, have permitted Texas dilution claims to survive the dismissal stage where the allegations track the statutory definition of famous and meet some of the fame factors. *E.g.*, *Gabbanelli Accordions & Imports, LLC v. Hermes Music Co.*, 398 F. Supp. 3d 156, 160 (S.D. Tex. 2019) ("Gabbanelli has specifically pled that its trademarks and trade dress 'are widely recognized by the public' in Texas 'as a designation of the source of [Gabbanelli's] goods,' [a] factual allegation [which] directly tracks the statutory definition of 'famous' under § 16.103 . . . Moreover, Gabbanelli's complaint also includes a detailed account of Defendants' widespread advertisement of allegedly infringing products via social media."); *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, 2019 WL 3130231, at *5

(W.D. Tex. July 15, 2019) (finding plaintiff adequately alleged fame under Lanham Act "at this stage in the litigation" where complaint alleged plaintiff is "one of the nation's largest producers" of camouflage patterns, clothing, and accessories; plaintiff "has made and sold goods under the MOSSY OAK mark since 1986, including product lines featuring the BREAK-UP mark"; "the[] marks have been 'widely advertised' and sold 'extensively' throughout the United States and abroad"; "the marks have received 'widespread and favorable public acceptance and recognition,'"; the "BREAK-UP-marked products have become 'one of the most popular, and best-selling, family of camouflage patterns in the history of the camouflage industry,'"; plaintiff "has licensed its marks and marked patterns to over 1,000 licensees,"; and "[t]he marks are registered"); *YETI Coolers, LLC v. Magnum Solace, LLC*, 2017 WL 5515910, at *7 (W.D. Tex. Mar. 30, 2017) (finding plaintiff adequately alleged fame "at this early stage in the litigation" where complaint alleged that "YETI has extensively and continuously promoted and used its designs for years in the United States and in Texas,"; that "YETI's designs have become well-known indicators of the origin and quality of YETI's insulated drinkware products,"; that YETI has "invested substantially in the . . . marketing of the Rambler™ Drinkeware,"; and that YETI has "enjoyed significant sales of the Rambler™ Drinkware" in the United States and Texas and has "expended significant resources advertising and marketing the Rambler™ Drinkware").

In its response, Transparent Energy points to the following allegations as establishing that the Mark is famous:

(1) that it has been using the Mark with the same continuing commercial impression since November 1, 2016 and has provided energy brokerage services to its customers in Texas and many other states since 2012 using Transparent-formulative designations, Compl. 2-3, ¶¶ 8-9;

(2) that it "ha[s] continuously used the TRANSPARENT ENERGY mark throughout the United States in connection with its energy brokerage service," *id.* 8, ¶ 50;

(3) that it "has extensively promoted and advertised its services offered under the TRANSPARENT ENERGY mark since November 1, 2016," *id.* 3, ¶ 14;

(4) that Premiere Marketing is prominently using the Mark on its website and in its representations to Texas government regulatory bodies, *id.* 4-5, ¶¶ 17-18, 28-29;

(5) that numerous energy customers have recognized Transparent Energy's success in the energy brokerage marketplace since 2012, *id.* 3, ¶ 13;

(6) that it "has provided energy brokerage services to its customers in Texas and many other states since 2012," *id.* ¶ 9;

(7) that it has cultivated valuable goodwill in the Mark, including through its use of the mark in commerce in Texas, *id.* 12, ¶ 77; and

(8) that it owns the United States Trademark Registration No. 5,227,222 for the Mark, *id.* 3, ¶ 10.

These allegations do not sufficiently establish that the Mark is famous, and Transparent Energy's Texas statutory dilution claim should be dismissed. While Transparent Energy has only conclusorily pleaded the duration and geographic reach of its advertisements, as well as the amount and geographic reach of its sales, importantly, the Complaint is devoid of any allegation regarding consumer recognition of the *Mark*. It is not enough that "[n]umerous energy customers have recognized Transparent Energy's success in the energy brokerage marketplace since 2012." *Id.* 3, ¶ 13. Indeed, under § 16.103, *the Mark itself* must be famous.

And Transparent Energy makes no allegation, conclusory or otherwise, regarding the extent to which its mark is recognized. The Court finds this factor of the fame analysis dispositive. Because the Complaint lacks allegations regarding the recognition of the Mark in the marketplace, Transparent Energy has not stated a claim for dilution under § 16.103 that is plausible on its face. Such a claim should be dismissed without prejudice

### D. Transparent Energy's common law unfair competition and misappropriation claim should be dismissed.

"The law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 367-68 (5th Cir. 2000) (citing *Am. Heritage Life Ins. v. Heritage Life Ins.,* 494 F.2d 3, 14 (5th Cir. 1974)). "Misappropriation is a branch of the tort of unfair competition which involves the appropriation and use by the defendant, in competition with the plaintiff, of a unique pecuniary interest created by the plaintiff through the expenditure of labor, skill and money." *Id.* (citing *Conan Props., Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 156 (5th Cir.1985)). The elements of an unfair competition or common law misappropriation claim are: (1) the creation of plaintiff's product through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (*i.e.*, a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff;

and (3) commercial damage to the plaintiff. *Raybourne & Dean Consulting, Ltd. v. Metrica, Inc.*, 2016 WL 7497587, at *19 (W.D. Tex. Feb. 19, 2016), *adopted by* 2016 WL 7496197 (W.D. Tex. Mar. 10, 2016), *aff'd,* 682 F. App'x 349 (5th Cir. 2017). "The first element requires the expenditure of extensive time, labor, skill, and money to manufacture a product, which need not be tangible, but must provide some commercial advantage." *Reed Migraine Ctrs. of Tex., PLLC v. Chapman*, 2015 WL 11120872, at *3 (N.D. Tex. Sept. 22, 2015) (quoting *In re TXCO Res., Inc.*, 475 B.R. 781, 836 (W.D. Tex. 2012)). Thus, misappropriation claims may succeed where the plaintiff invested significant time and energy into the development of an intangible product. *E.g. Sefton v. Jew*, 201 F. Supp. 2d 730, 749 (W.D. Tex. 2001) ("name recognition, service marks, intellectual property rights, and other intangible chattel rights"); *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d at 217-18 (animal sound recordings); *Universal City Studios, Inc. v. Kamar Indus., Inc.*, 1982 WL 1278, at *3 (S.D. Tex. 1982) (licensing and merchandising rights); *Gilmore v. Sammons*, 269 S.W. 861, 863 (Tex. App.—Dallas 1925, writ ref'd) (news items).

Here, the Complaint establishes that Transparent Energy has a protectable interest in the Mark. But Transparent Energy does not allege the amount of time, labor, skill, or money expended in developing the mark, or if any was expended at all. Thus, Transparent Energy fails to allege facts relevant to an essential element of the claim. Indeed, Transparent Energy alleges only that it began using the mark in November 2016, that it uses the mark "extensively" to promote and advertise its

services, and that "Premiere Marketing has gained a special advantage in the market by using the TRANSPARENT ENERGY mark, for which Premiere Marketing has been burdened with little to no expense." Compl. 3, 14, ¶¶ 14, 91. But this commercial advantage Transparent Energy alleges Premiere Marketing has obtained is "insufficient to make" this intangible item "a product for purposes of a misappropriation claim." *Reed Migraine Ctrs.*, 2015 WL 11120872, at *3.

Transparent Energy posits that the "pleading requirements for common law unfair competition and misappropriation are the same as those under the Lanham Act." Resp. 13 (citing *Amazing Spaces*, 608 F.3d at 236 n.7; *Westchester Media v. PRL USA Holdings*, 214 F.3d 658, 663-64 n.1 (5th Cir. 2000)). Indeed, the Fifth Circuit has noted that Texas common law trademark infringement and unfair competition claims present similar issues as federal trademark infringement claims. *Amazing Spaces*, 608 F.3d at 236 n.7. But, as mentioned above, in Texas, common law unfair competition is an umbrella cause of action arising out of dishonest business conduct. And, here, Transparent Energy appears to have alleged common law unfair competition *by* misappropriation. Compl. 14-15, ¶¶ 90-94 (grouping allegations for common law unfair competition and misappropriation under one caption without pleading distinct allegations for either). Moreover, Transparent Energy recognizes that "misappropriation is a branch of unfair competition" that requires "a unique pecuniary interest created by the Plaintiff through the expenditure of labor, skill and money." Resp. 13 (citation omitted). Transparent Energy does not point to any facts in the Complaint

that allege Transparent Energy expended labor, skill, or money in acquiring the allegedly infringed Mark. Premiere Marketing's Motion should be granted with respect to Transparent Energy's common law unfair competition and misappropriation claim.

### III. Transparent Energy should be granted leave to amend.

After being served with a Rule 12(b) motion, a party may amend its pleading with the other party's written consent or with leave of court. Fed. R. Civ. P. 15(a)(2). Leave to amend should be freely given, and it is an abuse of discretion to deny leave to amend without justification. *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004). Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

In its response, Transparent Energy asks that "if the Court finds additional factual allegations necessary," it "should be granted leave to amend its complaint." Resp. 18. Transparent Energy's request should be granted.

## Recommendation

For the foregoing reasons, Premiere Marketing's Motion to Dismiss should be GRANTED in part and DENIED in part, and its Motion to Transfer should be

DENIED. Transparent Energy should be granted leave to file an amended complaint.

**SIGNED** July 28, 2020.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a _de novo_ determination by the District Court. _See Thomas v. Arn_, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. _See Douglass v. United Servs. Auto. Ass'n_, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).