IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRANSPARENT ENERGY, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:19-cv-3022-BT |
| PREMIERE MARKETING, LLC, | § § § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Defendant Premiere Marketing, LLC (Premiere) has filed a Motion for Partial Summary Judgment (ECF No. 63) in this trademark infringement and unfair competition case. At issue is whether Plaintiff Transparent Energy LLC's (Transparent) federally-registered service mark, "TRANSPARENT ENERGY," Registration No. 5,227,222 (the "Mark"), is "distinctive" and thus valid and protectible. For the reasons stated, the Court finds there is a fact question as to whether the Mark is merely descriptive or at least suggestive of Transparent's energy brokerage services and therefore DENIES Premiere's Motion.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant can satisfy this burden by demonstrating that there is an absence of evidence to support the

1

nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); Fed. R. Civ. P. 56(e)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

Premiere moves for summary judgment on all of Transparent's affirmative claims and causes of action, as well as its own counterclaim for cancellation of the Mark.[1] Def.'s Mot. 1, ¶ 1. Transparent's claims and Premiere's counterclaim turn

---

[1] By this lawsuit, Transparent asserts the following claims: (1) federal trademark infringement; (2) federal trademark counterfeiting; (3) federal unfair competition and false designation of origin; (4) federal false association; (5) common law trademark infringement; and (6) Texas Trademark Infringement. Third Am. Compl. 6, 8-9, 11-13 (ECF No. 59-2). Premiere asserts counterclaims against

2

on substantially the same showings: that Transparent "(1) has a valid trademark, (2) which is eligible for protection, and (3) the similarity of the marks used by the defendant is likely to confuse the public." *FirstBank Sw. v. Heartland Fin. USA, Inc.*, 2021 WL 3743806, at *2 (N.D. Tex. Aug. 24, 2021) (citing *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012)); *see also All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.*, 991 S.W.2d 484, 488 (Tex. App.–Fort Worth 1999, no pet.) ("The issues in a common law trademark infringement action under Texas law are no different than those under federal trademark law.") (citing *Waples-Platter Cos. v. General Foods Corp.*, 439 F. Supp. 551, 583-84 (N.D. Tex. 1977)).

A mark is protectable and valid if it exhibits either "inherent" or "acquired" distinctiveness. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210-11 (2000). Determining a mark's inherent distinctiveness requires a court to place the mark in one of the "categories of generally increasing distinctiveness[:] . . . (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 240 (5th Cir. 2010) (internal quotation marks and citation omitted). Within these categories, generic marks are never distinctive, descriptive marks are only distinctive if they have a secondary meaning, and suggestive, arbitrary, and fanciful marks are inherently distinctive. *Id.* (citations omitted). Furthermore, "a mark has acquired distinctiveness, even if

---

Transparent for cancellation of the Mark, trademark infringement, and concurrent use. Def.'s Ans. 9-13 (ECF No. 103).

it is not inherently distinctive, [only] if it has developed secondary meaning." *Wal-Mart*, 529 U.S. at 211.

A trademark registration by the Patent and Trademark Office (PTO), such as Transparent has for the Mark, is "prima facie evidence of the validity of the registered mark." 15 U.S.C. § 1115(a). However, "[t]he presumption of validity of the [trade]mark is rebuttable and may be overcome by demonstrating, by a preponderance of the evidence, that the mark is generic, or if descriptive, that it lacks a secondary meaning." *Nursery Decals & More, Inc. v. Neat Print, Inc.*, 2020 WL 1819885, at *13 (N.D. Tex. Apr. 10, 2020) (citation omitted).

A federal court may cancel the registration of a trademark that it determines is not distinctive. *See Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 547 (5th Cir. 2015) (citing 15 U.S.C. § 1119 ("In any action involving a registered mark the court may . . . order the cancellation of registrations . . . .")); *see also Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 232 (5th Cir. 2009) ("[I]f the mark is found to be either generic or descriptive and lacking secondary meaning, a court may cancel it.").

Premiere argues that the Mark is invalid because it is at most descriptive and has no secondary meaning. Def.'s Motion ¶ 97. Thus, Premiere contends Transparent cannot succeed on any of its affirmative claims, and Premiere is entitled to cancellation of the Mark. Transparent, meanwhile, disputes that Premiere is entitled to summary judgment and claims that it need not prove secondary meaning because the Mark is "at least suggestive." Pl.'s Resp. 10.

4

Notably, "[b]ecause categorization [of marks as either suggestive or descriptive] is a question of fact, summary judgment is rarely appropriate." *Xtreme Lashes*, 576 F.3d at 232 (5th Cir. 2009) (citing *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 n. 12 (5th Cir.1980)).

The crux of Premiere's argument is that because "the terms 'transparent' and 'energy' are non-distinctive terms," the Mark, "transparent energy," is also non-distinctive. Def.'s Mot. ¶ 97. In advocating this proposition, Premiere relies on only one case precedent, saying "simply combining terms 'does not create a distinctive term from two non-distinctive terms.'" Def.'s Mot. ¶ 69 (quoting *FirstBank Sw.* 2021 WL 3743806, at *3). But *FirstBank* does not stand for the proposition Premier advances. Rather, *FirstBank*, and a number of cases like it, feature courts contemplating a specific case-by-case analysis, wherein they find that two generic words, when compounded, may or may not create a non-generic compound word or phrase. *See, e.g.*, *id.* (finding that the mark "FirstBank" was no more distinctive than the mark "First Bank," which had previously been found "weakly descriptive"); *In re Gould Paper Corp.*, 834 F.2d 1017, 1019 (Fed. Cir. 1987) (determining that "screenwipe" was just as generic as "screen wipe" because the plaintiff "simply joined the two most pertinent and individually generic terms applicable to its product"); *see also In re Am. Fertility Soc.*, 188 F.3d 1341, 1348 (Fed. Cir. 1999) (holding that proving genericness requires "clearly prov[ing] that the mark as a whole is no less generic than its constituents").

5

Premiere makes a similar argument based on the Trademark Manual of Examining Procedure (TMEP)—asserting that because Transparent agreed to disclaim the term "energy" as part of the trademark registration process, Transparent essentially admitted that the Mark "has no inherently distinctive . . . meaning beyond the mere sum of its parts." Def.'s Mot. ¶ 89 (citing TMEP § 1213.05). But the language Premiere cites only states that the USPTO "must not . . . require[]" disclaimer of portions of unitary marks; it does not state that a markholder may not disclaim any portion of a unitary mark of her own volition. TMEP § 1213.05. Indeed, "it is possible to disclaim all the separate components of a composite mark and still have a registrable whole comprising only the overall composite itself." McCarthy on Trademarks and Unfair Competition § 19:64 (5th ed.).

Moreover, the overwhelming weight of authority makes it clear that courts must "look at a multi-word mark as a unitary whole in its given arrangement, and . . . not parse apart the constituent terms." *Xtreme Lashes*, 576 F.3d at 232; *Union Nat. Bank of Tex., Laredo, Tex. v. Union Nat. Bank of Tex., Austin, Tex.*, 909 F.2d 839, 848 n.25 (5th Cir. 1990) (holding that courts should not consider a single word from the mark "alone . . . but rather the whole [mark], in [its] precise arrangement"); *Estate of P.D. Beckwith, Inc., v. Comm'r of Patents*, 252 U.S. 538, 545-46 (1920) ("The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail."). For example, in *Xtreme Lashes* the Fifth Circuit reasoned that while the words "just," "do," and

"it" are not protectable, Nike's signature phrase "just do it" is. *Id.* at 233. Therefore, the mere fact that the individual words that make up a mark are unprotectable, does not mean that the mark itself is unprotectable. The question here, then, is not whether "transparent" and "energy" are potentially protectable, but rather whether "transparent energy" as a whole phrase is protectable. Accordingly, in order to prevail at summary judgment, Premiere must prove that the whole phrase "transparent energy" is at most descriptive as a matter of law.

"Descriptiveness is construed broadly." *Xtreme Lashes* 576 F.3d at 232 (citation omitted). A mark is likely descriptive if its "dictionary definition corresponds with its meaning and context;" if it requires no use of "imagination, thought and perception to reach a conclusion as to the nature of goods" that the mark describes; if the mark-holder's "competitors would be likely to need the terms used in the trademark in describing their products;" and if "others have used the term in marketing a similar service or product." *Id.* (internal quotation marks omitted) (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 792-93 (5th Cir.1983)). Moreover, the question in determining whether a mark is descriptive or at least suggestive ultimately comes down to whether the mark "conveys an immediate idea of the qualities of" the relevant product, or "requires consumers to exercise their imaginations to draw conclusions about" the relevant product. *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 291 (5th Cir. 2020).

Premiere makes almost no argument regarding whether "transparent energy," as a whole phrase, is descriptive as a matter of law. For example, while Premiere appeals to the individual definitions of "transparent" and "energy," it makes no argument regarding whether the whole phrase "transparent energy" has a "dictionary meaning or idiomatic resonance." *Xtreme Lashes* 576 F.3d at 233. Stripping away its arguments regarding the distinctiveness of either "transparent," or "energy" separately, Premiere is left only with the following relevant evidence: statements by Transparent's CEO regarding the nature of Transparent and his process in choosing the name, search-engine results for "transparent energy," third-party use of the Mark and its constituent terms, and statements on Transparent's website regarding the company's values.

Specifically, Premiere points to the fact that, during a deposition, Transparent's CEO intimated that the Mark is more desirable than Transparent's former name because the Mark "is more efficient to say and to market and . . . it defines a broader scope of services." Def.'s Mot. ¶ 16 (citing Def.'s App. 5, at 10, 31:5-31:21 (ECF No. 68-1)). Similarly, Premiere notes that Transparent's CEO indicated in a deposition that Premiere should be able to communicate its value of transparency to its clients. Def.'s Mot. ¶ 28 (citing Def.'s App. 5, at 55-56, 77:10-78:6). Premiere also makes much of the fact that search engine results for "transparent energy" show two different entities—Premiere (whose site is ranked first) and Transparent. Def.'s Mot. ¶¶ 49-52 (citing Def.'s App. 12, at 2-6 (ECF No. 65-8)).

8

In addition, Premiere notes that the third-party "Transparent Energy uses the terms 'transparent' and 'energy' in various ways, both together and separately to describe its services and offerings[,] because '[t]here are few other ways to describe these concepts in the [energy] industry.'" Def.'s Mot. ¶ 33 (citing Def.'s App. 9, at 6-7 (ECF No. 65-5)). Premiere further points out that "Able Power Management, LLC uses the terms 'transparent,' 'energy,' and 'transparent energy' on its website to describe how it operates within the energy brokerage industry." *Id.* ¶ 32 (citing Def.'s App. 8, at 3-4 (ECF No. 65-4)). Premiere also shows that "Affiliated Power Purchasers International . . . descriptively uses the terms 'transparent' and 'energy' 'in reference to its [energy brokerage] services.'" *Id.* ¶ 34 (citing Def.'s App. 10, at 2-3 (ECF No. 65-6)).

These statements by Transparent's CEO, search engine results, and statements by third parties constitute some evidence that Transparent's competitors might need the terms used in the Mark to describe their products. However, the mere "fact that a trademark is desirable does not, and should not, render it unprotectable." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 488 (5th Cir. 2008). The statements of Transparent's CEO and the search results are insufficient to show that the Mark is anything more than a "desirable" name for an energy broker. Moreover, evidence that three third-party entities, not all of which are Transparent's competitors, Pl.'s App. 48 (ECF No. 73), use words from the mark "sparingly in reference to [their] services," Def.'s App. 10, at 2 (ECF No. 65-6), fails

9

to show the requisite need for the Mark's terms. *See March Madness Athletic Ass'n, L.L.C. v. Netfire, Inc.*, 162 F. Supp. 2d 560, 572 (N.D. Tex. 2001) (finding that a mark was not descriptive as a matter of law despite "approximately forty examples" of third parties using the mark).

Premiere's most relevant evidence consists of the following statements from Transparent's website: "Delivering energy plans in a way that is entirely honest, transparent, and filled with kindness;" "Why the name transparent? Transparency is a value that describes and defines our company. Its [sic] about honesty in dealings that is above reproach;" and "An energy brokerage based upon strong values and transparency." Def.'s Mot. ¶ 18 (citing Def.'s App. 5, at 16, 56:15-57:3; Def.'s App. 6 at 3-5 (ECF No. 65-3)). These statements present some evidence that the Mark is descriptive—because the term apparently describes the nature of Transparent's business to some extent.

But such slight evidence is not sufficient to rebut the Mark's presumption of validity; nor is it enough to establish Premiere is entitled to summary judgment—especially given the evidence that Transparent has supplied in addition to the Mark's registration. For example, contending that the Mark does not immediately convey attributes of an energy broker, Transparent notes that the USPTO has registered "transparent energy" for use in fields other than energy brokerage. Pl.'s Resp. 12-13 (citing Pl.'s App. 17); *see also* McCarthy on Trademarks and Unfair Competition § 11:69 (5th ed.) ("The fact that the USPTO registered a number of marks containing the same designation without requiring proof of secondary

10

meaning is some evidence that the PTO considers the designation not descriptive."). Transparent also points to several alternative impressions of the phrase "transparent energy," as evidenced by commercial practice in varying industries—including energy drinks, utilities, trucking, manufacturing, recycling, and software. Pl.'s Resp. 13-14. Finally, Transparent presents expert testimony that the Mark is a double entendre, and thus more likely suggestive than descriptive. *Id.* at 15-16 (citing Pl.'s App. 19).

After considering the evidence, the Court finds that Premiere has not presented evidence sufficient to rebut the Mark's presumption of validity. Moreover, there remains a fact question as to whether the Mark, "transparent energy," is either at most descriptive or at least suggestive. Indeed, whether or not the phrase requires some leap of the imagination for understanding "is a matter best weighed by a jury after a full presentment of the evidence." *Xtreme Lashes, 576 F.3d at 233*; *see also Union Nat. Bank*, 909 F.2d at 847 (cautioning against "leaping too quickly to any conclusion [regarding the appropriate characterization of a mark] before a full presentation of the evidence"). Accordingly, the Court DENIES Premiere's Motion for Partial Summary Judgment (ECF No. 63).

**SO ORDERED**.

December 29, 2021.

_____
REBECCA RUTHERFORD
U.S. MAGISTRATE JUDGE